18-3052. Do you need a minute? I'm ready to proceed. Very good. Thank you, counsel. May it please the court, my name is Ryan Ray and I represent the defendant and appellant Marco Antonio Cortes-Gomez and I would respectfully request to be able to reserve three minutes of my time. We'll see how it goes. Thank you, your court should reverse Mr. Cortes' conviction and sentence on several grounds that are set forth in our briefing but the most principle of which in which I'd like to focus on are the violations of statutory and constitutional rights to a speedy trial. Mr. Cortes' statutory right to a speedy trial within 70 days of his first appearance was violated in this case by the district court's granting of multiple continuances over his objection. The court reset the trial date at least five times and as a result 321 days elapsed between Mr. Cortes' first appearance and the commencement of his trial that actually proceeded on the merits. Now doesn't the time actually start running the 70-day period when the last co-defendant is brought before the court and at least unless that's unreasonable delay, is that correct? Not automatically, your honor. It's got to be a reasonable delay. It does have to be reasonable and this court made clear in Margheim and other cases that analysis of that question requires consideration of all relevant circumstances. Now here isn't it important that what was going on is a couple defendants were indicted and one decides to cooperate so that leads to a amendment to the indictment bringing in the third defendant and then that defendant decides to cooperate, plead guilty and two more defendants are brought in and that took a period of which to continue to delay the trial so all the relevant people are going to be there. Otherwise it's a waste of, you're going to be presenting so much of the same evidence multiple times and it was a period of what six months or so maybe less than that between the original indictment and the last indictment. I believe that it was a little bit longer than that, your honor. I believe there was a Irrespective of that, I would say this, your honor. These other defendants were known, their existence was known within a couple of days of the arrest and well before any indictment was made. These were not entirely unknown individuals. Their existence and identity was known to law enforcement before any indictment was filed and so when we consider the continuances that were granted, the one that we submit was the most erroneous was these 84 days from July 19th through October 11th that were granted based on the request of Mr. Worthington, one of the co-defendants, and his counsel came in and said I need ends of justice continuance and the court held a hearing on that on June the 21st and entered a written order on June the 22nd granting that continuance on the basis of his counsel's requested need for time to prepare. Did you object below under the framework of the ends of justice? It appeared that you were doing that more under the H-6 framework as opposed to the ends of justice. All of these continuances were opposed by Mr. Cortez and his counsel at the time in each and every event. Well that's not answering the question. I mean the question is how you frame the objection below and if the objection is well you can't give me, this is not an H-6 situation, your honor, don't allow him to have an extension under that. That's one thing because right now what I'm getting at essentially is are you making a different argument below, I mean here, than you made below in the sense that now you're challenging this and finding error under H-7 as opposed to H-6. That's my question. So what I would say is this, your honor, the objection made at the time was Mr. Cortez wants to go to trial and what we are saying now, which I think is the same thing that was said then, at least at a conceptual level, is you have to take Mr. Cortez's right to a speedy trial into consideration. Mr. Cortez wants to go to trial but the point, but the government, I assume, I don't remember now, the government had articulated, did the government articulate a reason for the exclusion of the 84 days? That, your honor, was done at the request of Mr. Worthington and his counsel. Okay, did he do that? He filed that motion. Okay, got it now. And Worthington, yeah, because that's relevant to another question I have, but okay, so did that Worthington's counsel articulate a basis for that exclusion? He did. It was I need time to prepare for trial and to be able to confer with my client. He didn't invoke a statutory provision? I believe it was the ends of justice H-7, your honor. He specifically invoked H-7. And the error that we contend is that when the court granted that, when it had the on-the-record discussion on June 21st and then when it when it issued the written order on June the 22nd, it didn't take Mr. Cortez's individual right to a speedy trial into account, which this court's precedent makes clear it has to do. Let me ask you this question, though. Even if, even assuming arguendo, there was error in granting an ends of justice continuance, if that same continuance could have been granted under H-6 in connection with co-defendants, then there is no reversible basis here for that challenge, right? If an H-6 continuance were proper, that would have been a basis theoretically available to the court. And why wouldn't an H-6 continuance have been proper? Because it's not reasonable under the circumstances of this case, especially by that point in time. Okay, explain to me what those circumstances are that would have rendered it improper. That Mr. Cortez was in custody, mandatorily, by the way. There was no way he could get out due to the icehold that was in place on him, that he had asserted that he wanted to go to trial as soon as possible at every circumstance. I believe he had appeared in front of the court at least three times by that point and said, I want to go to trial. And in addition, Your Honor, these defendants were that his cooperation began in July. And given the overall presentation of the case and that these other defendants were, Mr. Worthington was also inpatient seeking drug treatment. It's not indicative of someone that wants to go to trial. But Mr. Cortez was asserting that he wanted to go to trial as soon as possible and really at every situation. Well, I'm not questioning that, but you I assumed what you were doing was trying to get at the point that that Mr. Worthington was was caught was on the verge of cooperating at the time. Is it do I understand? Well, yeah, but that's not the justification that was uttered by his counsel. His counsel said, I'm not ready to go to trial. And and that is what the court used as a predicate for granting that age seven, right? But he also said at that same hearing, Your Honor, that Mr. Worthington needed time to determine how he wished to proceed. And there there was also there certainly was mentioned from his counsel of the potential of at least a plea. That may be. But this is not it's not it's not a clean all matter in the sense he's not saying, oh, I want to you know, I want to engage in plea negotiations. Your honor. So give me an age seven. Right. I would agree. It's not 100% exactly on our floors with Hall Hall. I'm sorry. But Hall is at least indicative of the type of things that the court should consider in making the determination of reasonableness under under the factors. When you have someone who's been an originally charged defendant and when you have the situation that all of these defendants were were known to the government at the outset of the case, then under consideration of all of the relevant circumstances and the Margon case also makes clear that it's critical whether a defendant seek severance, which Mr. Cortez did twice. He he he invoked really every available procedural mechanism to him to assert his right to a speedy trial on on every circumstance and in every situation. Let me let me ask you this question. You you mentioned early on the fact that he could not get out because ice had a hold on him. What? What is I had not focus that on that issue. What is what legal import do you derive from that? Because because no, it would have been a separate issue. Immigration hold that would have had nothing. Well, presumably had nothing to do with this criminal prosecution. So what what legal import would you have us take from that? I would say this, your honor, and this court's authorities talk about the availability of 3164 relief. Yeah. And for this for this gentleman, for for Mr. Cortez, 3164 relief in his release from custody was not available. That's that's that is in the record. It wasn't available because he had a nice hold. Correct. And so as a matter of law, then that relief was not available to him and that that should have counseled in his favor to proceeding to trial. That's one of the many relevant circumstances that are at play here. And when but that's not that but that would not be a function of anything that the government as prosecution was doing. I mean, that's fact. He was presumably had a nice hold because he was a legal alien. I mean, that that has nothing to do with what the government was doing to him. Right. That in and of itself in this prosecution. No, but the government also had sought his detention. The government at the outset of the case filed a detention was seeking to keep him in custody and was also opposing his request for severance and opposing his request to go for trial. So when we when we look at all of the relevant circumstances that are present in this case and everything that Mr. Cortez did and everything that he asserted, then under the under the reasonableness analysis, we submit that it was error to exclude a significant portion of at least of the of the days between his initial appearance and May the 19th. Yes, on the ends of justice continuance, early on you said that the district court failed to consider when it granted the EOJ continuance, the district court failed to consider the impact on your client. Correct. Why do you say that? Why do you say that the court didn't consider? Well, and this court's authorities make clear that it has to be done on the record or in the written order. And when I look at the transcript of that June 21 hearing and I look at that order of June the 22nd, I do not see any consideration or analysis of Mr. Cortez right to to go to trial. Was that raised to the district court? Or was it that your client argued I should get severance because this extension is going to delay me too long? Or did he say since I'm not getting the severance, you shouldn't grant the continuance because it hurts me too much? Was that second argument ever made? Certainly, your honor, at the June 21st hearing, Mr. Cortez says I want to go to trial and I'm objecting to this continuance for that reason. He did say that. He said that. His counsel said that at that hearing. And we submit that that was sufficient to invoke his right for purposes of the Speedy Trial Act, for purposes of objecting to the only continuance before the court, which was requested under H-7, and that his right and his interest had to be provisions. Now, you're also, although you focused on the 87 days, you also are complaining about the delays before that. Correct. You seem to be relying primarily on the fact that the the five eventual defendants were known. They'd all been mentioned initially. But does the government have to, should the they obviously waited until they had a more solid case against them because they had the individuals who originally charged defendants who could actually testify against these additional defendants? Isn't that appropriate? Well, your honor, I would say that we're given the fact that this was not a complex case and the fact that these individuals were alleged to be... That's meaningless in this circumstance, so it's complex or not. You have multiple layers of the hierarchy and you arrest some people who can tell you about a person one level above them. They have personal knowledge of that. They've heard it's these other two people. You have no real evidence against the higher-ups until the intermediate level person is willing to cooperate. Maybe it's not complicated, but it's also impossible to I would say this. The information about what was alleged to be going on was known to the government prior to the filing of the first indictment. Mr. Cortez was the highest up person, according to the government's theory, that was ever charged and all of these other people were known to be alleged by another co-defendant to be involved in distribution before the case was ever consideration that the court should take into account in determining the reasonableness of these exclusions and we said that they were unreasonable as to Mr. Cortez. James Brown of the United States. Your Honor, we think that the we think that both of the exclusions here were reasonable in this case, both under 3161 H6. We would just point out to the court, and I'm sure the court doesn't need to be reminded, that the standard of review is abuse of discretion and it's a very high standard and there's nothing in this record that shows anything that would show that an abuse of discretion occurred. But don't we need on the record that the district court considered an important factor and counsel has said we may think that if the court had considered everything it would still be within the court's discretion to grant the ends of justice continuance but to grant what I'm sorry to grant the ends of justice continuance but if the court didn't consider an important factor, why does that not preclude our deference under an abuse of discretion standard? All right, that sort of that question highlights an important issue here. The first issue that I raise, issue 1A, relates to one continuance that was solely granted under 3161 H6. So there's nothing about the court has to make factual findings. It's just reasonableness, abuse of discretion standard. The second issue is issue 1B, which relates to the continuance after Worthington did his first appearance until the trial date. The 84 days. The 84 days. And we are suggesting to the court we have not argued that that continuance is valid under 3161 H7. We have not argued that. The defendant points that out in his reply. We don't argue that. When we were writing the brief, we saw the Theron and Robinson cases that said you have to consider the defendant's individual interests. That wasn't apparent for the record. The court didn't make the findings. So you're not defending it under H7? No, we're defending it under H6, which is an abuse of discretion standard. The question is whether the district court's order actually invoked H6. My colleague says it did not invoke H6. We say it did invoke H6. In either event, we think the error was harmless or this court can affirm. First, this court can affirm because this court can affirm for any reason supported by the record, as it well knows. And the reasons that this court can affirm are set forth by the court in discussing Margheim. Basically, the court did a great discussion of the Margheim factor, Supplemental Volume 2, pages 76 and 77. And the court found that the Margheim factors favor the continuance. And we think that the court can affirm for that basis. We also say the court's failure to make any deficiency in the H17 finding was harmless because continuance was warranted under H6. We do make that argument. So that's where we're at on that. Now, we think that both of those continuances under an abuse of discretion standard are affirmable because the court, we think that the facts show that it clearly applies. And if you look, I think, at the Theron case or the Robinson case, the Robinson case, the government didn't even invoke H6. And this court found that it applied based on facts that are similar to the facts here because it was a multi-defendant conspiracy. Now, we'd like to just go back to the rationale for H6, which obviously applies here. The Margheim factors favor the government here. And especially a case from the Supreme Court, the Zafiro case, Z-A-F-I-R-O, that says that there's a preference for joint trials, that joint trials, quote, play a vital role in the criminal justice system because they, quote, promote efficiency and serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts. The court goes on to say the purpose of finding 3161 H6 is to accommodate the efficient use of prosecutorial and judicial resources in trying multiple defendants in a single trial. This court said that also in Theron and Margheim. Now, in asking whether a joint trial promotes these 3161 H6 interests, the court looks at whether the government will put on a single factual history, a single array of evidence, and a single group of witnesses. Let me interrupt you. All of that's true, but let me interrupt to ask you, didn't the district court grant those 84 days because of ends of justice? The district court did do that, and we say that the district court also invoked the H6 rationale for granting the same continuance. We get that, and this is where the defendant disagrees, and when we first read the order, we thought there was just no question that it applies. The defendant disagrees, but we go back to language on Supplement of Volume 2, page 77, otherwise known as Document 122, page 4, where the court talks about the Margheim test, single factual history, single array of evidence, and applies the exclusion to January 21 to May 19, and then says given this exclusion trial starting on October 11 will not deprive Mr. Cortez of a specific trial right. So when we wrote the brief, we read that as invoking H6, and if we misread it, we think the court can still affirm because the court can affirm for any reason supported by the record, and also the Robinson case, which to a sponte, invoked that. The delay still needs to be reasonable, though, under H6, and what do we do with the fact, at least in my recollection, correct me if I'm wrong, was that in seeking this 84-day continuance, not only did Worthington's counsel talk about lack of preparation, he talked about a vacation. What do we do about that? Well, I think the court goes back to the fact… Am I right about that? Did he do that? He did talk about that, and the court asked what we do about that, and I think what the court does is the court goes back to the Zafiro case, that there's a preference for joint trials, that they promote justice, they avoid inconsistent verdicts, they avoid scandals. We go back to that first. Second, we go back to the factors the court considers under the third Marheim factors, which are the single factual history, single array of evidence, and single group of witnesses. So the fact that the defendant's counsel is going to take a vacation doesn't mean that the ends of justice won't be promoted. Well, we're not talking about the ends of justice, were we? We're talking about H6. I'm sorry. I was… Promote efficiency and serve the interests of justice. Okay. The fact that the defendant's counsel is going to take a vacation does not mean that the ends of justice will not… And that's the Zafiro language, serve the interests of justice. Or that the fact that the case involves a single factual history, a single array of evidence, and a single group of witnesses does not justify the continuance as being reasonable under H6. It's just a factor, but it doesn't overcome the Marheim factors, in other words. So we think that's what the court does with that. But in any event, you know, just the fact that… I mean, just the fact that… I mean, everybody has complicated schedules, and getting a trial schedule is sort of like herding cats, and it's a difficult thing. But we have to go back. We think we have to go back to the reasonableness exclusion H6. It's there for a reason, and it's there to promote… by avoiding the scandal and inequity of inconsistent verdicts. We avoided that by an H6 continuance here. So the fact that there may have been some little thing out there that doesn't sound quite right does not mean that that makes that continuance unreasonable under an abuse of discretion standard. But don't you have to take into consideration… Didn't the district court have to take into consideration the fact that he was stuck in jail? He did, and that's one of the Marheim factors, and the court took that into consideration. That was known that the defendant was in jail. He was subject to an ice hold. If we had let him out of jail… Is there somewhere in the record where it looks like the court considered that? Yes, I'm sure there is. I would start with Supplemental Volume 2, pages 76 through 78, where the court talked about the first and second Marheim factors. The first factor is whether the defendant is in custody. The court found that that first factor favored the defendant. We don't contest that it favored the defendant. Our fight is over the third factor here, whether the court was entitled to give that factor preponderant weight. If there are no more questions about Issues 1 and B, I'd like to talk about the speedy trial issue, the constitutional speedy trial issue, if I could for just a minute. Go ahead. The defendant argues that the defendant's Sixth Amendment right to a speedy trial was violated because there was a ten-and-a-half-month delay between his initial indictment and his ultimate trial. Actually, he says the delay is ten months and 16 days. He cites Barker for the proposition that under the Barker factors that this violated the speedy trial right. We'd just like the court to keep in mind that we don't think that the Barker factors are even triggered under this case because the delay did not approach one year. In our brief, and we would reiterate here, the Abdu Shakur case states that a delay of 11 months is not presumptively prejudicial. So a delay of 11 months did not trigger the Barker factors in Abdu Shakur. So a delay of 10 months and 16 days should not trigger the Barker factors here. So you don't even get to the Barker factors because there's no presumptively prejudicial delay. And that's the main point we'd like to make on that. We also argue that the defendant was responsible for much of the delay. Some of the delays were neutral or did not weigh against the government in this case. We'd also like to point out that there's another issue that relates to whether the defendant's talked about whether he's asserted his speedy trial right the whole time and he did this without fail. Well, that's true in one sense, but in another sense, it's not completely supported by the record. There was a status conference, which is in the record at Supplemental Volume 7 and on pages 10 and 11 of that record. The Defendant's Counsel at the March 31, 2016 Women's Conference told the court that he could not be ready to go to trial on April 6th, but he didn't request a continuance. It's an odd situation where the Defendant's Counsel is saying, I'm not going to be prepared to go to trial, but my client is asserting his speedy trial rights. So what sort of position does that put the court in? And then the counsel went on and talked about how he may have to, if we do have a trial, the court may have to examine his, the counsel may have to examine his ethical responsibilities. Again, Supplemental Volume 7, pages 10, 11, maybe 12. You know, so here we have a situation where the defendant on appeal asserts, oh, I wanted my speedy trial right, I asserted it, but his counsel made statements saying he couldn't even be prepared to go to trial. And that, that is, that is, that is, so his statement that he absolutely wanted a speedy trial is sort of belied by the actions of his counsel, who basically coded to the court that he couldn't be ready for a trial. You know, we're just asking the court. The defendant continued to assert that he wanted a speedy trial. He did, he did, but his counsel took actions that showed that he couldn't even be ready for a speedy trial if that were granted. So what do we do, what do we do with that? Ultimately, you're vindicating the defendant's rights, I think. That's what you do with it. If counsel had to have his, consider his ethical responsibilities, that's what you need to do. Well, and if we're vindicating defendant's rights, are we vindicating defendant's rights by going to trial with counsel who's not prepared? We would just say that that's not really complete vindication. And that just, that puts a bomb in the, in the trial record for later on for getting, getting any verdict undone because counsel is not prepared and it's on the record. So, you know, on the one hand you're vindicating your right on paper, but on the other hand you're, you're just setting the whole case up for, for reversal later on. We don't think that promotes, that promotes the real reasons behind the speedy trial act. That's only one. What, what, what period of time is covered by that? Did that relate to the 84 days? Is that what you're talking about? The defendant's counsel made that remark on March 31, 16, said he could not be ready to go to trial on April 6, 2016. And, and so that resulted in the continuance until July 19, 2016. So it's, it's basically the way of three, three months. Okay. Other than that, I think I would just rest on the breeze for the other two issues, unless the court has any further questions. Thank you. Thank you. I am. One minute. Yes. Thank you. We would just say, Your Honor, that for, for abuse of discretion to apply, it would have to be applied to, to discretion that was actually exercised and actually invoked. And as to H6 on this 84 day continuance, we would submit that, that that was not invoked. If you look at that order, section B, and that's the July 19th order, section B talks about making the speedy trial finding as to Mr. Cortez. And all it says is that the ends of justice continuance that was granted as to Worthington applies equally to Mr. Cortez. So we can affirm on any ground supported by the record. As a general matter, that is true, Your Honor. And why wouldn't that be true here? It certainly can. It, it, because that was not an analysis that was undertaken. And in any event, Your Honor, as we've said, we submit examining all the relevant circumstances here that it was not a reasonable period of exclusion. Thank you. Thank you, Counsel. Case submitted. Counselor excused.